IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **SANDOR DEMKOVICH,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:16-cv-11576 ) ) |
| **ST. ANDREW THE APOSTLE PARISH, CALUMET CITY and, THE ARCHDIOCESE OF CHICAGO,** | ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff, SANDOR DEMKOVICH, by and through his attorneys, LAVELLE LAW LTD., and for his Complaint against ST. ANDREW THE APOSTLE PARISH and THE ARCHDIOCESE OF CHICAGO states as follows:

## NATURE OF THE SUIT

1. Plaintiff brings this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et. seq*, the Illinois Human Rights Act, 775 ILCS 5/2 *et. seq*, the Cook County Human Rights Ordinance, Sec. 42-30, for employment discrimination based on sex, sexual orientation, and marital status, Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12112 *et. seq*, and the Illinois Human Rights Act, 755 ILCS 5/1-102 *et. seq*, for employment discrimination based on disability.

1

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court pursuant to 28 USC §1331 in that the matter arises under federal law, specifically Title VII of the Civil Rights Act, 42 U.S.C §2000, *et. seq* and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12112 *et. seq*. This Court has supplemental jurisdiction under Plaintiff's state law and local ordinance claims pursuant to 28 U.S.C § 1367.

3. The Equal Employment Opportunity Commission investigated Plaintiff's claim of discrimination and issued a "Right to Sue Letter" authorizing Plaintiff to proceed in this Court. (Ex. A).

4. Venue is proper in this Court pursuant to 28 U.S.C 1391(b) because the facts and events giving rise to Plaintiff's claim occurred within this judicial district.

## THE PARTIES

5. Defendant ST. ANDREW THE APOSTLE PARISH (ST. ANDREW) is a Roman Catholic parish and church operating out of the ARCHDIOCESE OF CHICAGO. ST. ANDREW is located at 768 Lincoln Ave. Calumet City, Illinois 60409. ST. ANDREW is an employer within the meaning of Title VII, Americans with Disabilities Act of 1990, the Illinois Human Rights Act, and the Cook County Human Rights Ordinance.

6. Defendant THE ARCHDIOCESE OF CHICAGO (THE ARCHDIOCESE) is a Roman Catholic religious organization located at 835 N. Rush Street in Chicago, Illinois 60611. THE ARCHDIOCESE is an employer within the meaning of Title VII, Americans with Disabilities Act of 1990, the Illinois Human Rights Act, and the Cook County Human Rights Ordinance.

7. Plaintiff SANDOR DEMKOVICH ("DEMKOVICH") is a gay male formerly employed with Defendants. Plaintiff resides at 1948 Lake Avenue, Whiting, Indiana 46394. Plaintiff is an employee within the meaning of Title VII, Americans with Disabilities Act of 1990, the Illinois Human Rights Act, and the Cook County Human Rights Ordinance.

## UNDERLYING FACTS

8. DEMKOVICH was hired by the Defendants THE ARCHDIOCESE and ST. ANDREW in Calumet City, Illinois in late September of 2012, and employed by Defendants for approximately two (2) years before he was terminated on September 23, 2014.

9. DEMKOVICH's positions while employed with Defendants were Music Director, Choir Director and Organist, but he was not responsible for planning the liturgy at ST. ANDREW.

10. DEMKOVICH selected music played during masses at ST. ANDREW but each and every music selection DEMKOVICH made was subject to the approval of ST. ANDREW's pastor, REVEREND JACEK DADA ("DADA")., who, on occasion, declined to approve DEMKOVICH's selections and/or chose his own selections for music played at ST. ANDREW's masses.

11. DEMKOVICH's immediate supervisor was DADA.

12. DEMKOVICH never planned the liturgy for masses at ST. ANDREW. The liturgy for masses were planned by DADA.

13. DEMKOVICH worked for Defendants for nearly two (2) years without incident and he always met or exceeded the expectations of his employer.

14. DADA was aware that DEMKOVICH was a homosexual and was engaged to be married to his same-sex partner of fourteen (14) years.

15. On or about July 23, 2013, DADA asked DEMKOVICH when he and his partner planned on getting married and DEMKOVICH informed DADA that he and his partner planned to marry sometime in 2014.

16. Prior to DEMKOVICH's wedding, DADA began to ask Church cantors and choir members about information regarding DEMKOVICH's wedding, asking some of them repeatedly and frequently, via telephone and in person.

17. On or about September 17, 2014, a ST. ANDREW employee informed DEMKOVICH that DADA planned to ask DEMKOVICH for his resignation if he married his same-sex partner.

18. On or about September 18, 2014, a member of DADA'S staff told DEMKOVICH that DADA informed his staff that he had already terminated DEMKOVICH's employment with the parish, saying to her "He is already gone."

19. On or about September 19, 2014, DEMKOVICH married his same-sex partner.

20. Upon information and belief, on or about September 22, 2014, DADA asked another member of the parish staff to sign a sworn statement about her attendance at DEMKOVICH's wedding, saying she was obligated to do it.

21. Upon information and belief, the parish staff member described in paragraph 20 above declined to sign the sworn statement.

22. Upon information and belief, DADA then told the same staff member described in paragraphs 20 and 21 that DADA had already terminated DEMKOVICH, and that the staff member needed to find substitute organists for the upcoming parish weddings for which DEMKOVICH was contracted to play.

4

23. On or about September 23, 2014, DADA asked DEMKOVICH to attend a "staff meeting" in DADA's office.

24. The meeting was attended by only DEMKOVICH and DADA. During the meeting DADA asked DEMKOVICH about DEMKOVICH's wedding and then asked DEMKOVICH to resign from his post because the Catholic Church opposes same-sex marriages.

25. When DEMKOVICH declined to resign, DADA again asked for his resignation, saying "Your union is against the teachings of the Catholic church." DEMKOVICH refused a second time to resign, and DADA immediately terminated DEMKOVICH.

26. Upon information and belief, Defendant THE ARCHDIOCESE OF CHICAGO currently employs heterosexuals that have entered "non-sacramental" marriages that were not sanctioned by the Catholic Church.

27. Upon information and belief, Defendant THE ARCHDIOCESE OF CHICAGO currently employs women who have become engaged to and eventually married men in both traditional Catholic marriages and in marriages not sanctioned by the Catholic Church.

28. Upon information and belief, Defendant THE ARCHDIOCESE OF CHICAGO employs gay and lesbian employees who have not married same-sex partners.

29. DEMKOVICH was terminated because of his sex, sexual orientation, and marital status.

30. During the time that DEMKOVICH was employed by Defendants, DADA made remarks toward DEMKOVICH that showed sex- and sexual orientation-based animus, including referring to DEMKOVICH, his partner (to whom he was not yet married), and another male employee as "bitches" on February 9, 2013.

31. DADA repeatedly showed DEMKOVICH an awareness of DEMKOVICH's sexuality, referring to DEMKOVICH's partner as DEMKOVICH's "husband" in May 2013, well before the two had been married, and on other occasions.

32. On July 23, 2013, DADA told DEMKOVICH that he and his partner should get married and that the couple "are really good together."

33. During the same conversation on July 23, 2013, DADA told DEMKOVICH that he "would love to be there for you both" at DEMKOVICH's wedding to his partner.

34. DEMKOVICH suffers from diabetes and metabolic syndrome.

35. During the time DEMKOVICH was employed by the Defendants he was harassed frequently by DADA about his weight. On multiple occasions DADA would encourage DEMKOVICH to walk DADA's dog so that DEMKOVICH could get some exercise in an effort to lose weight.

36. DADA would also tell DEMKOVICH that he needed to lose weight because he didn't want to have to preach at DEMKOVICH's funeral.

37. On several occasions DADA informed DEMKOVICH that it was cost prohibitive for the parish to include DEMKOVICH on its health and dental insurance plans due to DEMKOVICH's weight and the fact that DEMKOVICH is a diabetic.

38. During 2012 DADA asked DEMKOVICH to join him for dinner whereby DEMKOVICH replied that he was unable to because he didn't have his insulin with him. DADA asked if the Plaintiff is a diabetic and stated that DEMKOVICH would need to "get his weight under control" to help eliminate DEMKOVICH's need for insulin.

## COUNT I
## SEX DISCRIMINATION UNDER TITLE VII

39. Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-38 as paragraph 39 of Count I of his Complaint.

40. Defendants engaged in unlawful employment practices as defined in Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000, *et. seq,* when they discriminated against DEMKOVICH because of his sex.

41. DEMKOVICH's sex was a motivating factor in his termination.

42. DEMKOVICH was meeting all legitimate job expectations when he was terminated.

43. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he married a man.

44. Defendants employ similarly situated females that have married men in both traditional Catholic marriages and in marriages not sanctioned by the Catholic Church.

45. Defendants discriminated against DEMKOVICH on the basis of his sex.

46. Defendants' discriminatory conduct was intentional, willful and wanton.

47. As a result of the Defendants' unlawful discrimination in violation of Title VII, DEMKOVICH suffered economic damages of salary and fringe benefits as well as non-economic damages of severe emotional distress and mental anguish.

48. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

    A. Reinstatement;

    B. Back Pay;

    C. Front Pay;

    D. Fringe Benefits;

    E. Compensatory Damages;

    F. Punitive Damages;

    G. Attorney fees and costs.

## COUNT II
## SEX, SEXUAL ORIENTATION, AND
## MARITAL STATUS DISCRIMINATION UNDER THE ILLINOIS HUMAN RIGHTS ACT.

49. Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-38 as paragraph 49 of Count II of his Complaint.

50. Defendants engaged in unlawful employment practices as defined under the Illinois Human Rights Act, 775 ILCS 5/2 *et. seq,* when they discriminated against DEMKOVICH because of his sex, sexual orientation, and marital status.

51. DEMKOVICH's sex, sexual orientation and marital status were motivating factors in his termination.

52. DEMKOVICH was meeting all legitimate job expectations when he was terminated.

53. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he was engaged to and intended to marry a man.

54. Defendants employ similarly situated females that have become engaged to and eventually married men in both traditional Catholic marriages and in marriages not sanctioned by the Catholic Church.

55. Defendants employ similarly situated heterosexuals that have entered into "non-sacramental" marriages that were not sanctioned by the Catholic Church.

8

56. The Defendants currently employ gay and lesbian employees who have not married same-sex partners.

57. Defendants discriminated against DEMKOVICH on the basis of his sex, sexual orientation, and marital status.

58. Defendants' discriminatory conduct was intentional, willful and wanton.

59. As a result of the Defendants' unlawful discrimination in violation of the Illinois Human Rights Act, DEMKOVICH suffered economic damages of salary and fringe benefits as well as non-economic damages of severe emotional distress and mental anguish.

60. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A. Reinstatement;

B. Back Pay;

C. Front Pay;

D. Fringe Benefits;

E. Compensatory Damages;

F. Punitive Damages;

G. Attorney Fees and Costs.

### COUNT III
### SEX, SEXUAL ORIENTATION, AND
### MARITAL STATUS DISCRIMINATION
### UNDER THE COOK COUNTY HUMAN RIGHTS ORDINANCE

61. Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-38 as paragraph 61 of Count III of his Complaint.

62. Defendants engaged in unlawful employment practices as defined under the Cook County Human Rights Ordinance Sec. 42-30 and Sec. 42-35, when they discriminated against DEMKOVICH because of his sex, sexual orientation, and marital status.

63. DEMKOVICH's sex, sexual orientation and marital status were motivating factors in his termination.

64. DEMKOVICH was meeting all legitimate job expectations when he was terminated.

65. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he married a man.

66. Defendants employ similarly situated females that have married men in both traditional Catholic marriages and in marriages not sanctioned by the Catholic Church.

67. Defendants employ similarly situated heterosexuals that entered into "non-sacramental" marriages that were not sanctioned by the Catholic Church.

68. The Defendants currently employ gay and lesbian employees who have not married same-sex partners.

69. Defendants discriminated against DEMKOVICH on the basis of his sex, sexual orientation, and marital status.

70. Defendants' discriminatory conduct was intentional, willful and wanton.

71. As a result of the Defendants' unlawful discrimination in violation of the Cook County Human Rights Ordinance, DEMKOVICH suffered economic damages of salary and fringe benefits as well as non-economic damages of severe emotional distress and mental anguish.

72. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A. Reinstatement;

B. Back Pay;

C. Front Pay;

D. Fringe Benefits;

E. Compensatory Damages;

F. Punitive Damages;

G. Attorney Fees and Costs.

**COUNT IV**
**DISABILITY DISCRIMINATION**
**UNDER TITLE I OF THE AMERICANS WITH DISABILITY ACT**

73. Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-38 as paragraph 73 of Count IV of his Complaint.

74. Defendants engaged in unlawful employment practices as defined under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sec. 12112, when they discriminated against DEMKOVICH because of his disability.

75. DADA was aware of DEMKOVICH's disability, namely his weight, diabetes and metabolic syndrome.

76. DEMKOVICH's weight, diabetes and metabolic syndrome are unrelated to his ability to perform the functions of his job that DEMKOVICH was required to perform.

77. DEMKOVICH's disability was a motivating factor in his termination.

78. DEMKOVICH was meeting all legitimate job expectations when he was terminated.

11

79. The continuous harassment by DADA created a hostile and intimidating work environment for DEMKOVICH.

80. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he was a diabetic and suffered from metabolic syndrome.

81. Defendants discriminated against DEMKOVICH on the basis of his disability.

82. Defendants' discriminatory conduct was intentional, willful and wanton.

83. As a result of the Defendants' unlawful discrimination in violation of the Americans with Disabilities Act, DEMKOVICH suffered economic damages of salary and fringe benefits as well as non-economic damages of severe emotional distress and mental anguish.

84. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A. Reinstatement;

B. Back Pay;

C. Front Pay;

D. Fringe Benefits;

E. Compensatory Damages;

F. Punitive Damages;

G. Attorney fees and costs.

## COUNT V
## DISABILITY DISCRIMINATION
## UNDER THE ILLINOIS HUMAN RIGHTS ACT

85. Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-38 as paragraph 85 of Count V of his Complaint.

86. Defendants engaged in unlawful employment practices as defined under the Illinois Human Rights Act, 755 ILCS 5/1-102, when they discriminated against DEMKOVICH because of his disability.

87. DADA was aware of DEMKOVICH's disability.

88. DEMKOVICH's weight, diabetes and metabolic syndrome are unrelated to his ability to perform the functions of his job that DEMKOVICH was required to perform.

89. DEMKOVICH's disability was a motivating factor in his termination.

90. DEMKOVICH was meeting all legitimate job expectations when he was terminated.

91. The continuous harassment by DADA created a hostile and intimidating work environment for DEMKOVICH.

92. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he was a diabetic and suffered from metabolic syndrome.

93. Defendants discriminated against DEMKOVICH on the basis of his disability.

94. Defendants' discriminatory conduct was intentional, willful and wanton.

95. As a result of the Defendants' unlawful discrimination in violation of the Illinois Human Rights Act, DEMKOVICH suffered economic damages of salary and fringe benefits as well as non-economic damages of severe emotional distress and mental anguish.

96. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A. Reinstatement;

B. Back Pay;

  C. Front Pay;

  D. Fringe Benefits;

  E. Compensatory Damages;

  F. Punitive Damages;

  G. Attorney fees and costs.

Dated: December 22, 2016

                Respectfully submitted,

                SANDOR DEMKOVICH

                /s/ Kristina B. Regal

Kerry Lavelle (No.6201522)
Kristina B. Regal (No. 6300647)
LAVELLE LAW, LTD.
501 W. Colfax Street
Palatine, Illinois, 60067
847-705-7555
kmlavelle@lavellelaw.com
kregal@lavellelaw.com