UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDOR DEMKOVICH, ) | |
| ) | |
| Plaintiff, ) | No. 1:16-cv-11576 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| ST. ANDREW THE APOSTLE PARISH, ) | |
| CALUMET CITY and, ) | |
| THE ARCHDIOCESE OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sandor Demkovich filed this suit against St. Andrew the Apostle Parish in Calumet City, Illinois, and the Archdiocese of Chicago. He alleges employment discrimination based on: (1) sex, sexual orientation, and marital status under Title VII, 42 U.S.C. § 2000e *et seq.*; the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*; and the Cook County Human Rights Ordinance, Cook County, Ill., Code of Ordinances § 42-30 *et seq.*, and (2) disability under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*, and the Illinois Human Rights Act, 755 ILCS 5/1-102 *et seq.*[1] R. 1, Compl. ¶ 1.[2] In particular, Demkovich claims that Reverend Jacek Dada, pastor of St. Andrew parish, fired Demkovich because he

---

[1] This Court has subject matter jurisdiction over Demkovich's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Demkovich's Illinois and Cook County claims under 28 U.S.C. § 1367(a). The "ministerial exception," which the defendants offer as cause to dismiss, is an affirmative defense, not a jurisdictional bar. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 n.4 (2012).

[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

entered into a same-sex marriage and because of his disabilities (diabetes and a metabolic syndrome). *Id.* ¶¶ 25, 29, 75, 77.

The Archdiocese (as this Opinion will collectively refer to the two Defendants) now moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 4, Defs'. Mot. Dismiss. The Archdiocese argues that the First Amendment's "ministerial exception" to employment discrimination claims bars all counts of Demkovich's complaint. For the reasons discussed below, the Archdiocese's motion is granted.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Archdiocese of Chicago and St. Andrew Parish in Calumet City, Illinois, hired Demkovich in September 2012. Compl. ¶ 8. Demkovich served as "Music Director, Choir Director and Organist." *Id.* ¶ 9. In those positions, Demkovich "selected music played during masses at St. Andrew," *id.* ¶ 10, but he did not plan the liturgy and his music choices were "subject to the approval" of Reverend Jacek Dada, who is St. Andrew's pastor, *id.* ¶¶ 9, 10, 12.

Reverend Dada knew that Demkovich was gay and that he was engaged to another man. Compl. ¶¶ 14, 31. Demkovich married his partner in September 2014. *Id.* ¶ 19. In the forty-eight hours before the wedding, a St. Andrew employee told Demkovich that Reverend Dada intended to ask for Demkovich's resignation

2

because of the marriage. *Id.* ¶ 17. Another employee told Demkovich that Reverend Dada had informed his staff that he had already fired Demkovich. *Id.* ¶ 18.

Four days after the wedding, Demkovich met Reverend Dada in the pastor's office, where Dada asked Demkovich to resign because of his marriage. Compl. ¶¶ 23-24. When Demkovich refused to resign, Dada fired him and said, "Your union is against the teachings of the Catholic church." *Id.* ¶ 25. Demkovich also alleges that, during his employment, Dada made remarks to him that reflected animus based on Demkovich's sex and sexual orientation. *Id.* ¶ 30. Demkovich also asserts, however, that Dada told Demkovich that he should marry his partner and that he (that is, Dada) would like to attend their wedding. *Id.* ¶¶ 32-33.

With regard to the disability-discrimination claim, Demkovich alleges that his disabilities—diabetes and a metabolic syndrome—were a contributing factor in his firing. Compl. ¶ 77. He says Dada repeatedly urged him to lose weight and complained about the cost of keeping Demkovich on the parish's health and dental insurance. *Id.* ¶¶ 35-38.

Demkovich brought suit for sex, sexual orientation, marital status, and disability discrimination under the statutes mentioned earlier in the Opinion. Compl. ¶¶ 40, 50, 62, 74, 86. He seeks reinstatement, back pay, front pay, fringe benefits, compensatory damages, punitive damages, and attorney's fees and costs. The Archdiocese now moves to dismiss, invoking the ministerial exception. Defs.' Mot. Dismiss.

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations—as opposed to mere legal conclusions—are entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79.

The ministerial exception is actually an affirmative defense, not a jurisdictional bar or a reason for dismissing a claim for failure to state a claim. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195

4

n.4 (2012). So it is conceivable that, sometimes, factual development is necessary before deciding the applicability of the ministerial exception. But as discussed next, on the face of the complaint as currently pled, and in light of governing case law, the ministerial exception applies.

### III. Analysis

The ministerial exception bars claims of employment discrimination advanced by "ministers" against their religious-institution employers. *Hosanna-Tabor*, 565 U.S. at 188, 190 (applying ministerial exception to employment discrimination claim); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1041 (7th Cir. 2006) (applying ministerial exception to age discrimination claim). The purpose of the exception is to "ensure[] that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical' … is the church's alone." *Hosanna-Tabor*, 565 U.S. at 194-95 (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.,* 344 U.S. 94, 119 (1952)). The exception is, therefore, expressly grounded in the First Amendment's religion clauses. *Hosanna-Tabor*, 565 U.S. at 181.

The exception's applicability depends on whether the plaintiff-employee was a "minister." *Hosanna-Tabor*, 565 U.S. at 190; *see also Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 704 (7th Cir. 2003) (holding that a diocese's Communications Manager qualified as a minister for purposes of the ministerial exception). For purposes of the exception, a minister can be someone other than "the head of a religious congregation." *Hosanna-Tabor*, 565 U.S. at 190. In fact, there is

no "rigid formula for deciding when an employee qualifies as a minister." *Id.* Rather, to determine whether a plaintiff qualifies as a minister, courts must engage in "factual and case-specific" analysis, *Collette v. Archdiocese of Chi.*, 200 F. Supp. 3d 730, 733 (N.D. Ill. 2016), considering things like the plaintiff's job duties and whether he or she "reflected a role in conveying the Church's message and carrying out its mission," "the formal title" the plaintiff held in the religious organization, "the substance reflected in that title," whether the plaintiff held herself or himself out as a minister, and whether the plaintiff performed "important religious functions." *Hosanna-Tabor*, 565 U.S. at 192.

The Archdiocese contends that the ministerial exception bars Demkovich's claims because he performed a ministerial function in his employment. Defs.' Mot. Dismiss at 1. Specifically, the Archdiocese argues that—as "Music Director, Choir Director and Organist," Compl. ¶ 9—Demkovich performed the ministerial function of selecting, directing, and playing the music at Catholic masses, Defs.' Mot. Dismiss at 3-4. They point to the similarity between Demkovich's work—"select[ing] music played during masses," Compl. ¶ 10—and the work of other music directors held to be ministers in other cases. *See Tomic*, 442 F.3d at 1040–41 (music director and organist was minister); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 180 (5th Cir. 2012) (music director was minister); *EEOC v. Roman Catholic Archdiocese of Raleigh*, 213 F.3d 795, 802-805 (4th Cir. 2000) (director of music ministry was minister); *Sterlinski v. Catholic Bishop of Chi.*, 2017 WL 1550186, at *4 (N.D. Ill. May 1, 2017) (music director was minister).

6

Demkovich disputes the Archdiocese's characterization of his work, arguing that Reverend Dada made the final decision on musical selection and that Demkovich never planned the liturgy. Pl.'s Resp. Br. at 2. To argue for his lay—as opposed to ministerial—status, Demkovich says he was only a part-time employee and that the pastor encouraged him to marry another man (something Dada ostensibly would not have done if he considered Demkovich a "minister" of the church, at least so Demkovich argues). *Id.* Demkovich contends that the Archdiocese places too much value on the job titles and too little on the substance of his job. *Id.* at 5. Demkovich also brings up a media interview in which the Archbishop of Chicago seemed to suggest that almost all church employees are ministers, thereby "completely dilut[ing]" the term. *Id.* at 8.

Based on the current complaint and the governing case law, the Court holds that Demkovich was a minister for the purposes of the ministerial exception. To be sure, although Demkovich's job titles are relevant, *see Hosanna-Tabor*, 565 U.S. at 191 (considering a called teacher's title relevant to her status as a minister), they are not dispositive. But when the job titles are combined with Demkovich's *self-described* function at St. Andrew—"select[ing] music played during masses," Compl. ¶ 10—the exception's applicability is inescapable. By selecting music for mass, Demkovich helped to "convey[ ] the Church's message" through the important religious function of worship music. *See Hosanna-Tabor*, 565 U.S. at 192. By allowing him to select music, direct the church choir, and play music, St. Andrew held out Demkovich "as a minister, with a role distinct from that of most of its

7

members." *Id.* at 191. True, the complaint does not specify whether Demkovich had any religious training—one factor in the Supreme Court's balancing test. *See id.* But the rest of the factors, particularly the substance of Demkovich's work at St. Andrew as he himself has pled it, weigh entirely in favor of considering Demkovich a minister.

Indeed, the Seventh Circuit in *Tomic* held that a nearly identical plaintiff—a church's music director—was a minister for purposes of the exception. 442 F.3d at 1040.[3] In deeming him a minister, the Seventh Circuit emphasized that he "select[ed] the music to be played at the various masses," which *Tomic* described as an exercise in "discretionary religious judgment." *Id.* Demkovich, by his own admission, made those same discretionary judgments in selecting music. Compl. ¶ 10. Demkovich's job, moreover, was strikingly similar to the plaintiffs' jobs in *Cannata*, 700 F.3d at 180 (barring suit), *Roman Catholic Archdiocese of Raleigh*, 213 F.3d at 802-805 (barring suit), and *Sterlinski*, 2017 WL 1550186, at *4 (barring claim for demotion from music director to organist, but allowing limited discovery into firing when he was a mere organist).[4] Demkovich attempts to distinguish *Tomic* by arguing that the plaintiff there alleged he was fired under a pretext while

---

[3]The parties debate to what extent *Tomic* is still good law. *See* Pl.'s Resp. Br. at 4; Defs.' Rep. Br. at 4-5. *Hosanna-Tabor* did abrogate *Tomic*, but only on one very specific point of law. 565 U.S. at 195 n.4. *Tomic* had held that the ministerial exception was an exception to subject matter jurisdiction, and *Hosanna-Tabor* abrogated that point, holding that it was actually an affirmative defense. *Id.* The remainder of *Tomic* survives.

[4]Limited discovery was appropriate in *Sterlinski* because it was unclear from the pleadings whether the plaintiff qualified as a minister after he was allegedly demoted to solely an organist. 2017 WL 1550186, at *5. It is unnecessary in this case, however, because Demkovich has already admitted that he selected the music for each mass, making him more than a mere organist. Compl. ¶ 10.

8

he (that is, Demkovich) was fired without pretext. Pl.'s Resp. Br. at 6. This argument has no force, however, because the Supreme Court has held that the reason for the firing is irrelevant; rather, what the ministerial exception protects is the "authority to select and control who will minister to the faithful" without government interference, period. *Hosanna-Tabor*, 565 U.S. at 195.

Demkovich also argues that he was not a minister because Reverend Dada could override his musical choices. Pl.'s Resp. Br. at 4. But Demkovich does not need final decisionmaking power to be considered a minister.[5] In *Tomic*, the opinion noted that a "rector or bishop could override [the music director's] choices of what music to play," but the court held him a minister nonetheless. 442 F.3d at 1041. Many other plaintiffs, moreover, have been considered ministers even though they did not possess final decisionmaking authority. *See, e.g.*, *Hosanna-Tabor*, 565 U.S. at 177 ("called" teacher subordinate to school administration); *Alicea-Hernandez*, 320 F.3d at 700 (Communications Manager without final decisionmaking authority); *Cannata*, 700 F.3d at 170-71 (music director subordinate to pastor).

What's more, Demkovich's part-time status does not disqualify him from ministerial status—none of the case law discusses full-time status as a factor, let alone one that could override the ministerial duties of the employee. Neither does the fact that Dada allegedly encouraged Demkovich to marry his partner. Although a person in a same-sex marriage cannot be ordained in the Catholic Church, ordination is not necessary for ministerial status. *See Hosanna-Tabor*, 565 U.S. at

---

[5]Indeed, if a minister must have final decisionmaking power, then even the pastor of St. Andrew is not a minister. He is, after all, subordinate in turn to a bishop.

9

193; *id.* at 198 (Alito, J., concurring). The Catholic Church would not have ordained Demkovich, but he still performed ministerial duties in other ways.

Demkovich cites a few cases in which courts have found that a religious organization's employee was not a minister. But none of those cases have analogous facts because none of those plaintiffs had jobs similar to a music director. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 655 (6th Cir. 2000) (lay teacher) (issue of ministerial exception not raised); *Dias v. Archdiocese of Cincinnati*, 2012 WL 1068165, at *1 (S.D. Ohio Mar. 29, 2012) (technology coordinator); *McCallum v. Billy Graham Evangelistic Ass'n*, 824 F. Supp. 2d 644, 646 (W.D.N.C. 2011) (resource coordinator); *Barrett v. Fontbonne Acad.*, 33 Mass. L. Rptr. 287, at *1 (Mass. Super. Ct. Dec. 16, 2015) (food service director). Instead, *Tomic* and similar cases on music directors are much closer to Demkovich's situation than the cases plaintiff cites.

Demkovich's reference to the television interview by the Archbishop of Chicago—that is, that the Catholic Church considers nearly all of its employees ministers, Pl.'s Resp. Br. at 8—is not persuasive. The Archbishop was not making a legal argument in that interview, and the Archdiocese does not press that argument in this case. The Supreme Court's decision in *Hosanna-Tabor* requires case-by-case analysis, so the exception will both apply where appropriate and be confined to its proper limits.

Beyond the applicability of the ministerial exception, Demkovich objects that the Court cannot resolve the ministerial exception—an affirmative defense—in a

Rule 12(b)(6) motion. Pl.'s Resp. Br. at 3-4. It is true that courts often wait to resolve affirmative defenses until after fact discovery. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" because "these defenses typically turn on facts not before the court at that stage in the proceedings."); *Cannata*, 700 F.3d at 172 n.3 ("Given the nature of the ministerial exception, we suspect that only in the rarest of circumstances would dismissal under Rule 12(b)(6)—in other words, based solely on the pleadings—be warranted.").

But where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense," it is appropriate to dismiss a case based on an affirmative defense, even at the pleading stage. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see also Brownmark Films*, 682 F.3d at 690 (dismissing case based on affirmative defense where "all relevant facts [were] presented" in the pleadings). The Seventh Circuit has repeatedly affirmed the dismissal of cases based on affirmative defenses through Rule 12(b)(6) (or Rule 12(c))[6] motions. *See Brownmark Films*, 682 F.3d at 690; *id.* at 690 n.1. Here, the applicability of the exception is ready for decision because, by stating in his complaint that he selected the music for each mass, Demkovich has presented all the facts necessary to decide the ministerial exception without discovery.

---

[6]The Seventh Circuit has noted that the more appropriate avenue for dismissal is a Rule 12(c) motion for judgment on the pleadings because the affirmative defense is "external to the complaint" itself. *Brownmark Films*, 682 F.3d at 690 n.1. The legal standards for the two motions are, however, indistinguishable, and the Seventh Circuit continues to affirm dismissals based on Rule 12(b)(6).

11

Demkovich makes a further argument that applying the ministerial exception in this case violates his fundamental right to marry as established by the Supreme Court in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). Pl.'s Resp. Br. at 11. That constitutional right to marry is, however, a right to be free from government discrimination, not a right to be free from private discrimination. *Obergefell*—based on the Fourteenth Amendment, which requires state action, U.S. Const. amend. XIV, § 1—has no application to an employment action by a private religious organization directed against a minister. Furthermore, even putting aside the state action doctrine, it is notable that the ministerial exception even bars claims of race discrimination against religious organizations. *Young v. N. Ill. Conference of United Methodist Church*, 21 F.3d 184, 188 (7th Cir. 1994) (barring race discrimination claim under Title VII). Demkovich does not explain why the exception bars ministers from bringing claims of race discrimination—a form of discrimination that draws the strictest form of constitutional scrutiny—but would be overridden by a claim premised on marital status. The ministerial exception does apply despite the fundamental right to marry.

Another point is worth a full discussion: how does the ministerial exception apply to claims based on state and local laws? It is undisputed that the ministerial exception applies to federal-law claims. *See Hosanna-Tabor*, 565 U.S. at 179, 188 (ADA claim); *Tomic*, 442 F.3d at 1037 (ADEA claim); *Sterlinski*, 2017 WL 1550186, at *1, *4 (Title VII and ADEA claims). But the Archdiocese appears to ask for dismissal of *all* of Demkovich's claims—federal, Illinois, and Cook County—on the

basis of the ministerial exception. Defs'. Mot. Dismiss at 2. This Court would normally relinquish federal jurisdiction over state-law claims after dismissing all the federal-law claims in a case; the presumption is relinquishment, which allows state courts to develop state law. *See* 28 U.S.C. § 1367(c)(3). Moreover, the Seventh Circuit has not decided on the applicability of the ministerial exception to state-law causes of action. Nor did parties here draw any distinction between the state and federal claims in their briefs.

But dismissal of all of the claims—federal, Illinois, and Cook County—on the basis of the ministerial exception is appropriate. The Supreme Court firmly grounded the exception in the First Amendment, which the Fourteenth Amendment incorporated against the states. *See Hosanna-Tabor*, 565 U.S. at 181 ("Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its ministers."). Indeed, in *Hosanna-Tabor*, the Supreme Court affirmed the district court's dismissal of a plaintiff's claim under a *Michigan* state employment discrimination law, in addition to a claim under the federal Americans with Disabilities Act. *Id.* at 194 & n.3 (noting, however, that the plaintiff had not disputed that the ministerial exception applied to her state law claim).

The lower courts generally dismiss both federal and state claims through the ministerial exception. In *Conlon v. InterVarsity Christian Fellowship*, for example, the Sixth Circuit affirmed dismissal of state and federal claims because the First Amendment applies with equal force to the state and federal governments and because *Hosanna-Tabor* was based, in part, on First Amendment cases invalidating

state laws. 777 F.3d 829, 836-37 (6th Cir. 2015). The Ninth and Fifth Circuits have decided cases doing the same thing. *See Alcazar v. Corp. of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1292 (9th Cir. 2010) (en banc); *Starkman v. Evans*, 198 F.3d 173, 175-77 (5th Cir. 1999). Several district courts—including in this District—have followed the same path,[7] although there are exceptions.[8]

It is appropriate for this Court to dismiss all of the claims because as a matter of *federal* constitutional law—not state law—the Archdiocese cannot be held liable for a firing in an employment discrimination case brought by their minister. The Illinois Human Rights Act and Cook County Human Rights Ordinance are analogous to state-law claims dismissed by other courts and, for that matter, to federal employment discrimination laws. Although some of Demkovich's claims derive from state law, there is no state law to develop in this case: the ministerial exception, derived from the First Amendment, disposes of all the claims.

One final note. Federal Rule of Civil Procedure 5.1, which implements 28 U.S.C. § 2403(b), requires federal district courts to certify to a state attorney general that a party has challenged a state statute on federal constitutional grounds. Fed. R. Civ. P. 5.1(a)(1)(B), (b). By asserting an affirmative defense to

---

[7]*See Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668, 669-70 (N.D. Ill. 2012); *Preece v. Covenant Presbyterian Church*, 2015 WL 1826231, at *5 (D. Neb. Apr. 22, 2015); *Leavy v. Congregation Beth Shalom*, 490 F. Supp. 2d 1011, 1014, 1024-25 (N.D. Iowa 2007); *Stately v. Indian Cmty. Sch. of Milwaukee, Inc.*, 351 F. Supp. 2d 858, 862 (E.D. Wis. 2004).

[8]*Fratello v. Roman Catholic Archdiocese of N.Y.*, 175 F. Supp. 3d 152, 168 (S.D.N.Y. 2016) (granting summary judgment for federal claim based on the ministerial exception, but declining to decide whether the exception applied to state claim and relinquishing federal jurisdiction), *aff'd*, 863 F.3d 190, 192 (2d Cir. 2017).

Demkovich's claims, the Archdiocese in this case arguably has challenged, in effect at least, the constitutionality, in part, of a state law and a county ordinance. Nonetheless, despite how often plaintiffs have raised the ministerial exception for state claims, this Court can find no cases in which a district court has notified the relevant state attorney general under Rule 5.1. Nor has Demkovich asked the Court to do so. So the Court can resolve this motion without first notifying the Illinois attorney general.

All counts in the complaint are dismissed. Because the complaint has not been amended, for now the dismissal is without prejudice. Demkovich has twenty-one days to amend his complaint; the Court is skeptical that the allegation that prompted the ministerial exception's application can be fixed, but Rule 15(a) does generally require one shot at amendment. If Demkovich does not amend his complaint within twenty-one days, then the dismissal in this order will become a dismissal with prejudice on all counts.

## IV. Conclusion

For the reasons discussed, the defendants' motion to dismiss is granted. The status hearing is reset to October 27, 2017, at 8:30 a.m.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2017