## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| **SANDOR DEMKOVICH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16-cv-11576 |
| | ) | |
| | ) | |
| **ST. ANDREW THE APOSTLE PARISH,** | ) | |
| **CALUMET CITY and,** | ) | |
| **THE ARCHDIOCESE OF CHICAGO,** | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, SANDOR DEMKOVICH, by and through his attorneys, LAVELLE LAW LTD., and for his First Amended Complaint against ST. ANDREW THE APOSTLE PARISH and THE ARCHDIOCESE OF CHICAGO states as follows:

### NATURE OF THE SUIT

1.     Plaintiff brings this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et. seq,* the Illinois Human Rights Act, 775 ILCS 5/2 *et. seq*, the Cook County Human Rights Ordinance, Sec. 42-30, for employment discrimination based on sex, sexual orientation, and marital status, Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12112 *et. seq*, and the Illinois Human Rights Act, 755 ILCS 5/1-102 *et. seq*, for employment discrimination based on disability.

1

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court pursuant to 28 USC §1331 in that the

matter arises under federal law, specifically Title VII of the Civil Rights Act, 42 U.S.C §2000,

*et. seq* and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12112 *et. seq.*

This Court has supplemental jurisdiction under Plaintiff's state law and local ordinance claims

pursuant to 28 U.S.C § 1367.

3.      The Equal Employment Opportunity Commission investigated Plaintiff's claim of

discrimination and issued a "Right to Sue Letter" authorizing Plaintiff to proceed in this Court.

(Ex. A).

4.      Venue is proper in this Court pursuant to 28 U.S.C 1391(b) because the facts and

events giving rise to Plaintiff's claim occurred within this judicial district.

## THE PARTIES

5.      Defendant ST. ANDREW THE APOSTLE PARISH (ST. ANDREW) is a

Roman Catholic parish and church operating out of the ARCHDIOCESE OF CHICAGO.  ST.

ANDREW is located at 768 Lincoln Ave. Calumet City**,** Illinois 60409.  ST. ANDREW is an

employer within the meaning of Title VII, Americans with Disabilities Act of 1990, the Illinois

Human Rights Act, and the Cook County Human Rights Ordinance.

6.      Defendant THE ARCHDIOCESE OF CHICAGO (THE ARCHDIOCESE) is a

Roman Catholic religious organization located at 835 N. Rush Street in Chicago, Illinois 60611.

THE ARCHDIOCESE is an employer within the meaning of Title VII, Americans with

Disabilities Act of 1990, the Illinois Human Rights Act, and the Cook County Human Rights

Ordinance.

2

7.    Plaintiff SANDOR DEMKOVICH ("DEMKOVICH") is a gay male formerly employed with Defendants. Plaintiff resides at 1948 Lake Avenue, Whiting, Indiana 46394. Plaintiff is an employee within the meaning of Title VII, Americans with Disabilities Act of 1990, the Illinois Human Rights Act, and the Cook County Human Rights Ordinance.

## UNDERLYING FACTS

8.    DEMKOVICH was hired by the Defendants THE ARCHDIOCESE and ST. ANDREW in Calumet City, Illinois in late September of 2012, and employed by Defendants for approximately two (2) years before he was terminated on September 23, 2014.

9.    DEMKOVICH's positions while employed with Defendants were Music Director, Choir Director and Organist, but he was not responsible for planning the liturgy at ST. ANDREW.

10.   DEMKOVICH selected music played during masses at ST. ANDREW but each and every music selection DEMKOVICH made was subject to the approval of ST. ANDREW's pastor, REVEREND JACEK DADA ("DADA")., who, on occasion, declined to approve DEMKOVICH's selections and/or chose his own selections for music played at ST. ANDREW's masses.

11.   DEMKOVICH's immediate supervisor was DADA.

12.   DEMKOVICH worked for Defendants for nearly two (2) years and he always met or exceeded the expectations of his employer.

13.   DADA was aware that DEMKOVICH was a homosexual and was engaged to be married to his same-sex partner of fourteen (14) years.

3

14. During his employment at ST. ANDREW, DEMKOVICH witnessed abusive and harassing behavior from DADA and other members of ST. ANDREW's staff, including *inter alia*:

    a. A ST. ANDREW staff member referring to certain female members of ST. ANDREW as "fucking bitches" in DADA's presence, to which, on information and belief, DADA took no corrective or remedial action;

    b. ST. ANDREW staff members routinely referring to African-American members of the community in derogatory terms, including frequent use of the derogatory term "nigger;"

    c. A ST. ANDREW member referring to African-American members of the community as "niggers" in DADA's presence, to which, on information and belief, DADA took no corrective or remedial action;

    d. ST. ANDREW staff members routinely referring to Mexican-American members of the community in derogatory terms, including use of the derogatory term "spics;"

    e. A ST. ANDREW staff member referring to Mexican-American members of the community in a derogatory manner in DADA's presence, to which, on information and belief, DADA took no corrective or remedial action; and

    f. DADA referring to African-American members of the community in a derogatory manner.

15. During his employment at ST. ANDREW, DEMKOVICH was subjected to abusive and harassing behavior from DADA due to his sex, sexual orientation, and marital status.

4

16.   During the time that DEMKOVICH was employed by Defendants, DADA made remarks toward DEMKOVICH that showed sex- and sexual orientation-based animus, including referring to DEMKOVICH and his partner (to whom he was not yet married) as "bitches."

17.   On or about July 23, 2013, DADA asked DEMKOVICH when he and his partner planned on getting married and DEMKOVICH informed DADA that he and his partner planned to marry sometime in 2014.

18.   The abusive and harassing behavior became increasingly hostile as the date of DEMKOVICH's marriage approached.

19.   DADA began to confront and harass ST. ANDREW's staff members, parish members, cantor and choir members about DEMKOVICH's anticipated matrimonial ceremony to his partner, demanding that they inform DADA of information they knew concerning the ceremony.

20.   On information and belief, DADA asked other staff members at ST. ANDREW to assist him in the activities described in paragraph 19, and some staff members did assist DADA.

21.   On information and belief, DADA told a member of ST. ANDREW's staff that DEMKOVICH was promulgating his ceremony more than he should.

22.   On information and belief, DADA referred to DEMKOVICH and his partner's matrimonial ceremony as a "fag wedding."

23.   Several of the members of ST. ANDREW that were being confronted and harassed, as described in paragraph 19, informed DEMKOVICH that DADA and another staff member were repeatedly and frequently harassing and/or frequently contacting them in person and over telephone for details regarding DEMKOVICH's ceremony.

24.   The individuals that were being harassed and/or frequently contacted, as described in paragraph 19, informed DEMKOVICH that DADA's behavior, as well as the behavior of those aiding him, was distressing and a cause of anxiety.

25.   On or about September 17, 2014, a ST. ANDREW employee informed DEMKOVICH that DADA planned to ask DEMKOVICH for his resignation if he married his same-sex partner.

26.   On or about September 18, 2014, a member of DADA'S staff told DEMKOVICH that DADA informed his staff that he had already terminated DEMKOVICH's employment with the parish, saying to her "He is already gone."

27.   On or about September 19, 2014, DEMKOVICH married his same-sex partner.

28.   Upon information and belief, on or about September 22, 2014, DADA harassed another member of the parish staff, demanding that she sign a sworn statement about her attendance at DEMKOVICH's wedding, saying she was obligated to do it.

29.   Upon information and belief, the parish staff member described in paragraph 28 above declined to sign the sworn statement.

30.   Upon information and belief, DADA then told the same staff member described in paragraphs 28 and 29 that DADA had already terminated DEMKOVICH, and that the staff member needed to find substitute organists for the upcoming parish weddings for which DEMKOVICH was contracted to play.

31.   On or about September 23, 2014, DADA asked DEMKOVICH to attend a "staff meeting" in DADA's office.

32.   The meeting was attended by only DEMKOVICH and DADA in the latter's office, with another ST. ANDREW staff member seated outside of DADA's office. During the

6

meeting DADA asked DEMKOVICH about DEMKOVICH's wedding and then asked DEMKOVICH to resign from his post because the Catholic Church opposes same-sex marriages.

33.  When DEMKOVICH declined to resign, DADA again asked for his resignation, saying "Your union is against the teachings of the Catholic church." DEMKOVICH refused a second time to resign, and DADA immediately terminated DEMKOVICH.

34.  DEMKOVICH suffers from diabetes and metabolic syndrome.

35.  During the time DEMKOVICH was employed by the Defendants he was harassed frequently by DADA about his weight.  On multiple occasions DADA would encourage DEMKOVICH to walk DADA's dog so that DEMKOVICH could get some exercise in an effort to lose weight.

36.  DADA would also tell DEMKOVICH that he needed to lose weight because he didn't want to have to preach at DEMKOVICH's funeral.

37.  On several occasions DADA informed DEMKOVICH that it was cost prohibitive for the parish to include DEMKOVICH on its health and dental insurance plans due to DEMKOVICH's weight and the fact that DEMKOVICH is a diabetic.

38.  During 2012 DADA asked DEMKOVICH to join him for dinner whereby DEMKOVICH replied that he was unable to because he didn't have his insulin with him. DADA asked if the Plaintiff is a diabetic and stated that DEMKOVICH would need to "get his weight under control" to help eliminate DEMKOVICH's need for insulin.

39.  DEMKOVICH was not the only staff member at ST. ANDREW that was overweight or suffered from chronic health issues but, on information and belief, was the only staff member at ST. ANDREW that suffered from frequent and routine harassment and abuse from DADA due to his health issues.

40.   DEMKOVICH was subjected to abusive and harassing behavior because of his sex, sexual orientation, and marital status.

41.   DEMKOVICH was subjected to abusive and harassing behavior because of his medical conditions and disability.

42.   DEMKOVICH felt discriminated against by DADA on account of his sex, sexual orientation, and marital status.

43.   DEMKOVICH felt discriminated against by DADA on account of his medical conditions and disability.

44.   DEMKOVICH felt humiliated and belittled by DADA's and certain ST. ANDREW staff member's above described abusive behavior towards DEMKOVICH and other members of ST. ANDREW's staff and parish.

45.   DADA and the ST. ANDREW staff members that assisted DADA in his harassment performed the acts described herein during, in the course, and in the scope of their employment by Defendants.

46.   DEMKOVICH's personal and professional reputation has been severely damaged by the afore-described abusive and harassing behavior, and he has been ostracized both personally and professionally as a result of the abusive behavior he suffered from at ST. ANDREW.

47.   DEMKOVICH's physical and mental health has suffered as a result of the abusive environment at ST. ANDREW, causing DEMKOVICH to experience *inter alia* fatigue, significant weight gain, insomnia, and also be diagnosed with clinical depression.

## COUNT I
## SEX, SEXUAL ORIENTATION, AND MARITAL STATUS DISCRIMINATION BASED ON A HOSTILE WORK ENVIRONMENT UNDER TITLE VII

48.     Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-47 as paragraph 48 of Count I of his Complaint.

49.     Defendants engaged in unlawful employment practices as defined in Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000, *et. seq,* when they discriminated against DEMKOVICH because of his sex, sexual orientation, and marital status.

50.     DEMKOVICH's sex, sexual orientation, and marital status were motivating factors in the sustained harassment that DEMKOVICH was subjected to during his employment with ST. ANDREW.

51.     DEMKOVICH was discriminated against and suffered a hostile and abusive work environment when it was discovered that he was going to marry his partner.

52.     DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he would be marrying his partner.

53.     Defendants discriminated against DEMKOVICH on the basis of his sex, sexual orientation, and marital status.

54.     DEMKOVICH found Defendants' acts to be offensive, unwelcome, and unwanted.

55.     Defendants' acts were in fact offensive, unwelcome, and unwanted.

56.     Defendants' discriminatory conduct was intentional, willful, and wanton.

57.     As a result of the Defendants' unlawful discrimination in violation of Title VII, DEMKOVICH suffered economic damages as well as non-economic damages of severe emotional distress, mental anguish, and physical ailment.

9

58.  DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A.  Compensatory Damages;

B.  Punitive Damages; and

C.  Attorney fees and costs.

## COUNT II
## SEX, SEXUAL ORIENTATION, AND
## MARITAL STATUS DISCRIMINATION BASED ON A HOSTILE WORK
## ENVIRONMENT UNDER THE ILLINOIS HUMAN RIGHTS ACT.

59.  Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-47 as paragraph 59 of Count II of his Complaint.

60.  Defendants engaged in unlawful employment practices as defined under the Illinois Human Rights Act, 775 ILCS 5/2 *et. seq,* when they discriminated against DEMKOVICH because of his sex, sexual orientation, and marital status.

61.  DEMKOVICH's sex, sexual orientation, and marital status were motivating factors in the sustained harassment that DEMKOVICH was subjected to during his employment with ST. ANDREW.

62.  DEMKOVICH was discriminated against and suffered a hostile and abusive work environment when it was discovered that he was going to marry his partner.

63.  DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he would be marrying his partner.

64.  Defendants discriminated against DEMKOVICH on the basis of his sex, sexual orientation, and marital status.

65.  DEMKOVICH found Defendants' acts to be offensive, unwelcome, and unwanted.

66.  Defendants' acts were in fact offensive, unwelcome, and unwanted.

67.  Defendants' discriminatory conduct was intentional, willful, and wanton.

68.  As a result of the Defendants' unlawful discrimination in violation of the Illinois Human Rights Act, DEMKOVICH suffered economic damages as well as non-economic damages of severe emotional distress, mental anguish, and physical ailment.

69.  DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A.  Compensatory Damages;

B.  Punitive Damages; and

C.  Attorney Fees and Costs.

## COUNT III
## SEX, SEXUAL ORIENTATION, AND
## MARITAL STATUS DISCRIMINATION BASED ON A HOSTILE WORK
## ENVIRONMENT UNDER THE COOK COUNTY HUMAN RIGHTS ORDINANCE

70.  Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-47 as paragraph 70 of Count III of his Complaint.

71.  Defendants engaged in unlawful employment practices as defined under the Cook County Human Rights Ordinance Sec. 42-30 and Sec. 42-35, when they discriminated against DEMKOVICH because of his sex, sexual orientation, and marital status.

72. DEMKOVICH's sex, sexual orientation, and marital status were motivating factors in the sustained harassment that DEMKOVICH was subjected to during his employment with ST. ANDREW.

73. DEMKOVICH was discriminated against and suffered a hostile and abusive work environment when it was discovered that he was going to marry his partner.

74. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he would be marrying his partner.

75. Defendants discriminated against DEMKOVICH on the basis of his sex, sexual orientation, and marital status.

76. DEMKOVICH found Defendants' acts to be offensive, unwelcome, and unwanted.

77. Defendants' acts were in fact offensive, unwelcome, and unwanted.

78. Defendants' discriminatory conduct was intentional, willful, and wanton.

79. As a result of the Defendants' unlawful discrimination in violation of the Cook County Human Rights Ordinance, DEMKOVICH suffered economic damages as well as non-economic damages of severe emotional distress, mental anguish, and physical ailment.

80. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A. Compensatory Damages;

B. Punitive Damages; and

C. Attorney Fees and Costs.

## COUNT IV
## DISABILITY DISCRIMINATION BASED ON A HOSTILE WORK ENVIRONMENT UNDER TITLE I OF THE AMERICANS WITH DISABILITY ACT

81. Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-47 as paragraph 81 of Count IV of his Complaint.

82. Defendants engaged in unlawful employment practices as defined under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sec. 12112, when they discriminated against DEMKOVICH because of his disability.

83. DADA was aware of DEMKOVICH's disability, namely his weight, diabetes and metabolic syndrome.

84. DEMKOVICH's weight, diabetes and metabolic syndrome are unrelated to his ability to perform the functions of his job that DEMKOVICH was required to perform.

85. DEMKOVICH's disability was a motivating factor in the sustained harassment that DEMKOVICH was subjected to during his employment with ST. ANDREW.

86. The continuous harassment by DADA created a hostile, abusive, humiliating, and intimidating work environment for DEMKOVICH.

87. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he was a diabetic and suffered from metabolic syndrome.

88. Defendants discriminated against DEMKOVICH on the basis of his disability.

89. DEMKOVICH found Defendants' acts to be offensive, unwelcome, and unwanted.

90. Defendants' acts were in fact offensive, unwelcome, and unwanted.

91. Defendants' discriminatory conduct was intentional, willful, and wanton.

92.  As a result of the Defendants' unlawful discrimination in violation of the Americans with Disabilities Act, DEMKOVICH suffered economic damages as well as non-economic damages of severe emotional distress, mental anguish, and physical ailment.

93.  DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A.  Compensatory Damages;

B.  Punitive Damages; and

C.  Attorney fees and costs.

## COUNT V
## DISABILITY DISCRIMINATION BASED ON A HOSTILE WORK ENVIRONMENT UNDER THE ILLINOIS HUMAN RIGHTS ACT

94.  Plaintiff DEMKOVICH re-alleges and incorporates paragraphs 1-47 as paragraph 94 of Count V of his Complaint.

95.  Defendants engaged in unlawful employment practices as defined under the Illinois Human Rights Act, 755 ILCS 5/1-102, when they discriminated against DEMKOVICH because of his disability.

96.  DADA was aware of DEMKOVICH's disability.

97.  DEMKOVICH's weight, diabetes and metabolic syndrome are unrelated to his ability to perform the functions of his job that DEMKOVICH was required to perform.

98.  DEMKOVICH's disability was a motivating factor in the sustained harassment that DEMKOVICH was subjected to during his employment with ST. ANDREW.

99.  The continuous harassment by DADA created a hostile, abusive, and intimidating work environment for DEMKOVICH.

14

100. DEMKOVICH was treated less favorably than other similarly situated employees when it was discovered that he was a diabetic and suffered from metabolic syndrome.

101. Defendants discriminated against DEMKOVICH on the basis of his disability.

102. DEMKOVICH found Defendants' acts to be offensive, unwelcome, and unwanted.

103. Defendants' acts were in fact offensive, unwelcome, and unwanted.

104. Defendants' discriminatory conduct was intentional, willful, and wanton.

105. As a result of the Defendants' unlawful discrimination in violation of the Illinois Human Rights Act, DEMKOVICH suffered economic damages as well as non-economic damages of severe emotional distress, mental anguish, and physical ailment.

106. DEMKOVICH is entitled to recover damages from Defendants.

WHEREFORE, Plaintiff DEMKOVICH prays that this Court render judgment in his favor and award the following damages:

A. Compensatory Damages;

B. Punitive Damages; and

C. Attorney fees and costs.

Dated: October 20, 2017

Respectfully submitted,

SANDOR DEMKOVICH

/s/ Kristina B. Regal

Kerry Lavelle (No.6201522)
Kristina B. Regal (No. 6300647)
LAVELLE LAW, LTD.
1933 N. Meacham Rd., Suite 600
Schaumburg, Illinois 60173
847-705-7555
kmlavelle@lavellelaw.com
kregal@lavellelaw.com